Today's case is No. 25-1356, Stephen Skayer v. City of Nashua, NH. At this time, would Counsel for the Appellants please come to the podium and introduce himself on the record to begin. Good morning, Your Honors. Nathan Asuja for the Appellants. I would like to reserve three minutes for rebuttal. You may. May it please the Court. Your Honors, a government cannot turn private speech into government speech simply by exercising final approval authority over that speech. Under the 2022 flagpole program at issue in this case, the City of Nashua allowed people to apply to fly flags on a citizen flagpole outside City Hall. The City admits it did not provide these flags, did not own these flags, it did not edit the iconography on these flags or alter their contents in any way. Flags were often raised by the applicants themselves in private flag-raising ceremonies without anyone from the City present, and sometimes these ceremonies featured private speeches that were openly critical of the City government. Despite this, the District Court found that all the flags on the pole from May 2022 to October 2024 were government speech that had been adopted by Nashua simply because Nashua City officials had final approval authority over flag applications under certain written criteria in their policy. This Court must reverse for two reasons. First of all, final approval authority is not a sufficient level of control to adopt speech. That is the clear holding of the Tam v. Mattel case of the Supreme Court, as well as the holding of multiple sister circuits. Rather to adopt speech, a government must control this speech by either acquiring property rights over that speech, or by editing and altering the content of the speech itself. Here, the undisputed facts show that Nashua did neither. The District Court's holding thus improperly extended government speech doctrine, despite the Supreme Court's explicit warning that the facts of the Walker v. Texas Division case is the outer bounds of government speech doctrine. Second, the District Court confused the history prong of government speech doctrine for the control prong. And this led to the District Court upholding the flagpole program, even though the District Court itself found that for the first five years of this program, the citizen flagpole was a limited public forum for citizen speech. During those five years, even the District Court agreed that Nashua did not in any way use the pole to express its own message. For both these errors, whether separately or together, would require reversal. Now, the Supreme Court has repeatedly warned about the dangers of government speech doctrine, and the dangers of expanding this doctrine. Overly expansive definitions of government speech threaten to swallow up forum analysis, with, as a result, many legal problems. Because forum analysis is crucially important for governments. Governments often open their private property for citizens. So tell me about the plaza, and the use of the plaza versus the flying of the flags. How does that fit into your theory? So our applications that are in the record asked both to fly a flag on the pole and to have a flag raising ceremony raising that flag on the plaza. So there was only one application form and one policy at the time for either holding an event or holding a flying a flag. Outside of these flag displays and events, what does the record show about the use of the plaza for private speech purposes? Discovery has not been performed yet. So I don't have many specific facts in the record as of yet about the use of the plaza for non-flag related activities. There is abundant evidence of different types of flag related activities in the record. Both particular flag raising ceremonies the city itself ran for certain government flags, and private ceremonies that were run by private applicants for their flags. Some of which, those applicants were my clients for other flags. Some third parties unrelated to this case in any way. The record does note that there are other events on the plaza, and that those events have to be applied using the, well, in the time period at issue until October 2024, those events were applied using the same policy. Today, the policy for city plaza events is still the same policy that it was at the time. However, the flag pole policy has been repealed. It was repealed in October 2024 after this case. So now those are two separate tracks. I mean, there is no track for flag applications. But under the city hall plaza events policy, which is still on the website and in the record, all events on the plaza are government speech, not just flag raisings or flag raising ceremonies. In fact, the same standard, events in city hall plaza must meet the same standard that was used for flags. They have to, there's four different. You mentioned no discovery has been held. What can discovery provide here, or what can yield a better picture should the case be sent back? Appellants don't believe that discovery will be particularly productive for either side. The facts here are not in dispute. The main thing that we would be seeking discovery for is just to have a full list of every single flag and every single event that was applied during the time period at issue, those that were accepted and also those were rejected, so that I could, we could have specific numbers. We have some sense of the numbers already because those numbers are, vague numbers are already undisputed. For example, it's undisputed that roughly there are 10 flags every year that are flown, or were flown through this application process. But I don't have specific numbers in a specific list of these are the exact dates, these are the people who applied. And that is what discovery would focus on. For example, maybe there were 30 applications, maybe there were 10 and everybody was able to fly the flag. That's what you need to know. We do know largely that, Your Honor, already. We know exactly how many flags were rejected during the time period, and we have a reasonably good sense of how many flags were accepted and what those flags were, just not specific numbers. There were six specific flags that we know were rejected during the time period, and we know what those were. Counsel, I had a question about history. Neither side has put in much, if anything, about what happened prior to the 2017 new administration and the decision to let citizens' flags fly on the flagpole. Surely the flagpoles are older than that, and surely there was some use of the flagpoles prior to 2017. I would have thought that that would be a pertinent bit of history. Would you care to comment? As I understand, Your Honor, and I think this is mentioned briefly in the record, but it's not been gone into, there was, I think, a city flag or something that flew all the time before 2017, but I do not know what specifically that was. You would agree that in that circumstance, it came much closer to meeting the test for government speech? Absolutely, Your Honor. Until 2017, the national government had not opened up the citizen flagpole for any kind of private speech. We are not disputing that and not attempting to argue that before. Only when they intentionally opened the citizen flagpole as a forum in 2017 are we... Do you have any idea of how long those flagpoles were there? I do not, Your Honor. Well, let's hypothesize they were there for close to 100 years, and the consistent use was government speech until the policy was adopted in 2017. I would have thought that would be of interest. In your request for a preliminary injunction, you ask for an injunction against the flagpole not accepting your client's flags, regardless if they choose to close the forum. You don't seem to have argued that on appeal, but I don't understand the argument. Why isn't it open to the city to do that, should we rule in your favor? Sorry, Your Honor, you're asking why is it not open for them to return to their pre-2017 policy of simply having one flag? Well, we believe that is open to the city. They can end the use of the citizen flagpole as any sort of forum whatsoever and simply fly one flag. And we are not disputing that that may be, in fact, what they did in October 2024. We have no particular position of what happened in October 2024, other than that they certainly ended the 2022 policy we challenged. I'm sorry, that's not what your briefing says. Your briefing challenges the 2024 policy as more of the same, that it still doesn't convert the city's policy into government speech. Further, I understood you'd argue it still doesn't give adequate notice and it doesn't provide strictures on the discretion of the decision maker. I do not understand. Your oral argument is simply inconsistent with your brief. I don't know specifically what passage you're referring to in our brief. I certainly am not attempting to argue in a brief that the 2024 policy is being challenged. The 2022 policy is the one that we are challenging in this case, which is the May 2022, not the October 2024, Your Honor. Then why isn't the case moot? The case is certainly not moot, Your Honor, because as the district court found and as Nashua did not challenge below or before this court, first of all, because we have requests for nominal damages, and secondly, because as this court found, there is no guarantee that the current 2024 policy will last. The 2022 policy was repealed solely at the discretion of former defendant Donchess, Mayor Donchess, who still has full discretion to return to the 2022 policy. And in fact, something very similar to the 2022 policy continues to be the policy that is defended and used for all city events, just not for flagpoles anymore, as I noted earlier. So the district court found, and we would continue to argue, that that fails to meet the voluntary cessation doctrines, high requirement, high burden on defendants to prove that they have mooted a claim solely through their own voluntary cessation. Okay. Any further questions? No, thank you. You have rebuttal. Thank you, Your Honor. Thank you, Counsel. At this time, would Counsel for the appellee please come to the podium and introduce himself on the record to begin? Good morning, Honorable Court. My name is Stephen Bolton. I'm the Corporation Counsel for the City of Nashua. At the table with me is Attorney Jonathan Barnes, the Assistant Corporation Counsel for the City of Nashua, and we are here today representing the City of Nashua. Discussion so far this morning has centered on government speech, and that is quite appropriate. The magistrate judge in her recommendation, which was adopted by the district court judge, focused on the requirement of demonstrating a likelihood of success on the merits in order to get a preliminary injunction. She recommended denial based on the fact that— Counsel, we know—Counsel, excuse me. We know very well what the record shows as to the decision. So you haven't claimed that this is moot. Does that mean that the city wants us to decide more or less whether this is government speech? And let me ask this question. If it is not government speech, do you concede that there has been viewpoint discrimination? Yes, we concede that. Okay, so then let's focus on the government speech issue. You will agree that our review of the underlying legal question is de novo, correct? It is the question of government speech, yes. Yes, okay, so why isn't your opponent correct in saying that mere approval of private speech as consistent with the policies that this administration wants to pursue doesn't make it government speech? That that falls exactly into the trap that the Supreme Court warned against in the Tam case? We think the Shurtleff case is much more on point. Yes, I know. I was reversed on that in the Supreme Court. All right, so as I view it, if you apply either the majority's Shurtleff factors or the concurring opinion's Shurtleff factors, it is doubtful the magistrate judge's opinion is correct. Well, I'm sorry to hear that, Your Honor. It's not. Well, I know you are. I think you need to reply on the merits. Yes. In Shurtleff itself, the Supreme Court invited the city of Boston to adopt a different policy. And if the city of Boston could do it, it seems it was free that other communities could, and Nashua, approximately a week after the Shurtleff decision, recognized that its situation was strikingly similar to the Boston situation. Flag poles in front of City Hall, a brick paved plaza where other events and demonstrations and ceremonies took place. The Supreme Court in Shurtleff said the most salient point, salient feature of that case for their analysis was that Boston exercised virtually no control over what flags would be flown. Indeed, the facilities manager often didn't even see the flags before they were raised. Under the 2022 policy in Nashua, the application requires a photograph of the flag, requires a statement of what the flag's intent, what message the flag is intended to express. And the city specifically declines to establish the flag pole as a public forum for free expression, but only expression that the city wishes to take for its own and endorse and agree with. So I think that is how this differs from situations in the Boston case itself and other situations where public fora have been established. So this is not, even in Tam and other cases, there's nothing that says that the city has to then take ownership of the flag or the city had to design the flag or the city had to amend the flag to say something in addition to what it otherwise would have said. A government, just like any other entity, can recognize good ideas and bad ideas without having invented them itself. So when a flag is raised under the new policy, under the 2022 policy in Nashua, it is the government expressing that view. It's right in front of City Hall. It's right on Main Street. Passersby will say, there's City Hall. Well, look, what kind of a place is Nashua if they're flying this symbol or that symbol or some other symbol that is generally not regarded as savory? That is the situation that exists. Nashua has chosen to fly on what are known as the citizens' flagpoles, flags that are brought to it by private speakers who own the flags, who design the flags, who come up with the message that the flags display. And then the government is using the force of government to choose among those viewpoints. And that is what government cannot do. And Nashua, when it was challenged, chose not to revert to its historic policy of only flying Nashua flags or maybe only flying the U.S. flag at Nashua flags or only flying government flags. It opened it up as an open forum. And then it decided which messages it wanted to endorse and which it didn't. And that is the essence of viewpoint discrimination. We agree that there is viewpoint discrimination. If this is government speech, which we say it is, the government is not required to give airtime to opposing views. It is its view that government can speak for. I think what Judge Lynch is saying is here anybody can come up with his or her flag and give it to the government, the Nashua government. But the Nashua government is the one who will determine these are the flags we're going to use as government speech. Correct. Tomorrow it can say no to a Nazi flag. Tomorrow it can say yes to another type of flag. And tomorrow to another type of flag. But it's individuals who are presenting those flags. It's not the government itself. There's a procedure for people to present their flags. And they're getting rejected. Some are getting accepted. And that's what plaintiffs' counsel was saying, that some have been accepted, some rejected under this policy. That is absolutely true. There are some things that the government wishes to endorse and express as its own view, and other things that the government does not wish to adopt, endorse, or express as its own view. What's happening here is it's an open policy that people, individuals, or entities can present their flags. And some are chosen over the others. This is not the government at City Hall saying, we're going to display these flags because this is what we believe in. This is people who believe in what City Hall believes in are getting their flags posted. Let me put it that way. That's what's happening, correct? I suppose that's one way to look at it, Your Honor. We believe it is more in line with, basically, the policy that we cribbed from San Jose, which the short-lived court spoke in favor of. Your brother's opposing brief discusses that policy at great length and points out the many differences between what San Jose did and what Nashua has chosen to do. So I don't think that's a very strong argument. Very well. We perhaps could have done a better job, but that was the intent of the effort. It does not strike me, and it's certainly not our position, that the government has to create every message with which it agrees. And it's free to adopt expressions that were invented by others. Can I ask you something about that? The events that might attend either the flag raising or coincide with the flag having been raised, in a particular instance, your brother said that sometimes speeches were made that were even critical of the Nashua government, that he said no one would assume. I'm paraphrasing. No one would assume that Nashua intended to adopt that speech. Can you actually segregate the events that surround the flying of these flags from the flags themselves? Is that something that government can do? So if government adopts a book that somebody writes to be distributed in schools by the government, can the government adopt certain photographs in the book and not other photographs, but never tell anybody which ones it's adopting and not adopting? I would think if the government did that, the book example, it would not be a very wise decision, and it would be difficult for anyone to tell what is adopted and what is not adopted unless a detailed explanation was provided. So not telling, I think, would be any gain. Okay, so bring it back to what's happening or was happening on the plaza. I think there's a very striking difference between the use of the plaza for a demonstration or a ceremony or an event, even an event that criticizes the local government, in that the time period is however long or brief but is likely to be a matter of hours, not days or weeks. It's likely to be observed by the people passing by during that perhaps two-hour period where the demonstration takes place. People who go there may get that message and may understand that if it's criticizing the local government, it's probably not the position of the local government, whereas if the local government allows a Nazi flag to fly in front of City Hall, that's going to be there for a week or whatever time period, but more than just a few hours. Certainly that's what the plaintiffs in this case wish. They applied for a week in each case. But what difference does it make if it's there two hours, ten hours, 24 hours, a week? The people going by have no other context to put it in other than that's the national government supporting a Nazi philosophy, whereas if it's a demonstration and you see that there are people in Nazi regalia or promoting hatred of certain religions or whatever they wish unsavory thing to promote. You say it's the national government supporting that flag, it's a Nazi flag. That's your concern? I think that's what people will likely gather if they see that flag. Let me put it this way. Currently the current administration does not support abortion. What if there is a pro-choice flag flying up there? That's not consistent with current federal policy. Don't you have a problem there also? Correct. Or it could be vice versa during another administration. And while not as dramatic, I suppose, as the Nazi flag, if that's not the position of local government in this case, it's very likely that people will be confused and misunderstand what the position of local government is. Anything further I can respond to? Thank you. Thank you very much. Thank you. Three minutes rebuttal. Thank you, Counsel. Please reintroduce yourself on the record to begin. Your Honors, Nathan Mastuchios for the appellants. Nashua has conceded that if the flags on the flagpole are not government speech, then they have viewpoint discriminated. And they have also today admitted that ceremonies, demonstrations, and speeches on the plaza, as I understood them to be saying that, are not government speech or not necessarily government speech, despite the fact that their own policy states that they, in fact, are government speech. The difference that Nashua seems to be making is on the thoroughness of its application. They're saying because we have an application process that is more thorough than Boston's, we know that this is government speech. Undoubtedly, their application process is more thorough than Boston's. It is not, however, more thorough than application processes in many other limited public forum. It's not, for example, more thorough than the application process that the PTO used in Mattel v. Tam or the application process that the bus ads in this court's Ridley case used. Those were both examples of agencies that had lengthy application processes, in fact, much more detailed than Nashua's, but nonetheless were limited public forum. This demonstrates that Nashua is attempting to do exactly what the Supreme Court warned against, attempting to expand government speech in such a way as to cover all limited public forum. May I ask a question? I draw a distinction between demonstrations on the plaza and the flying of flags on the flagpole. Under the pre-citizens flag era, surely there were demonstrations on that plaza. Probably during the Vietnam era, there were anti-war demonstrations. Probably there were civil rights demonstrations. Your case focuses on the flagpoles, correct? And if Nashua were to adopt a policy of only government flags or no private flags, demonstrations would still occur constitutionally in your view. Is that correct? Correct, Your Honor. Our case is focused on the flagpole and flag-raising ceremonies only, not on all events. And we do clarify we are not asking that this court prevent Nashua from closing the flagpole as a forum or returning to something like the pre-2017 system. We're only asking for a preliminary injunction against the viewpoint discrimination that was going on between 2017 and 2024 against the 2022 policy specifically or the restoration of something very similar to the 2022 policy, something much like the current policy that is used for events even today. I don't really understand that. Suppose your clients come in tomorrow and they say, we want to fly the flags that you turned down before. What do you want this court to do? Order that the city has to allow them to fly the flags? We want, for the pendency of this litigation, that the city be ordered to not return to anything like the 2022 policy, that if they keep it fully closed right now and do not return to discriminating based on viewpoint during the pendency of this litigation, that's all we're asking for, Your Honor. And they have failed to meet the voluntary cessation document. In that case, why doesn't a declaratory judgment satisfy your concerns? A declaratory would satisfy the concerns insofar as it would prevent them doing the same thing, Your Honor. But a preliminary injunction is what we've asked for and they have not. But if it's an injunction and the city officials do not choose to allow your clients to fly the flag, then one gets into contempt proceedings against city officials. It's quite a strong remedy. At the time we asked for it, Your Honor, they had not yet changed the policy, of course. And that is why voluntary cessation doctrine is what is relevant, Your Honor, is that we don't have a requirement to change our original request. They have the burden to show that the changes that they made after we made the request somehow moot the request. And the lower court found that they did not meet their heavy burden under voluntary cessation doctrine. Yes, well, thank you. Thank you, counsel. That concludes argument in this case.